[No. 12947. In Bank. — May 18, 1891.]

LOUISE HEIDT, RESPONDENT, *v.* PETER O. MINOR ET AL., APPELLANTS.

OFFICIAL BOND — LIABILITY OF SURETIES — CONSTRUCTION. — The liability of sureties upon an official bond depends upon the terms and conditions of the bond; and the obligation being *strictissimi juris*, nothing will be taken by construction against the obligors.

ID. — BOND OF NOTARY — OFFICIAL DUTY — MISAPPROPRIATION OF MONEYS. —As it is no part of the official duty of a notary to receive money from or for anybody, his sureties are not liable for money fraudulently obtained and retained by him.

ID. — FORGED MORTGAGES — FALSE CERTIFICATES OF ACKNOWLEDGMENT — RETENTION OF MONEYS LOANED. — Where a notary public, who was also a real estate agent and engaged in negotiating loans, by false representations procured money upon forged mortgages, to which he had appended his certificate of acknowledgment, and then fraudulently retained the money, his sureties are liable only for the loss occasioned by reason of his certificates of the due acknowledgment of the mortgages, and not for the amount of the money loaned and fraudulently retained by him.

ID. — VALUE OF FRAUDULENT MORTGAGES — MEASURE OF DAMAGES FOR FALSE CERTIFICATE OF NOTARY. — In an action for damages against the sureties of a notary for the fraudulent act of the notary in attaching to counterfeit mortgages certificates of their due acknowledgment, upon the faith of which the mortgagee loaned a sum of money, the measure of damages is the value of the mortgages if they had been valid, to be determined in view of the value of the property apparently mortgaged.

APPEAL from a judgment of the Superior Court of Santa Clara County.

The facts are stated in the opinion of the court.

*Archer & Bowden,* and *A. L. Rhodes,* for Appellants.

The sureties upon an official bond are not sureties for the general good behavior of the officer; but they are responsible only for his official misconduct or neglect. (Dissenting opinion in *Rochereau* v. *Jones,* 29 La. Ann. 82; see also *Schloss* v. *White,* 16 Cal. 68; *Walden* v. *Davison,* 15 Wend. 579; *Paddock* v. *Cameron,* 8 Cow. 213; *Gorham* v. *Gale,* 6 Cow. 467; 7 Cow. 739–743; 17 Am. Dec. 549; Murfree on Official Bonds, secs. 401–403,

461.)   The law requires a strict construction of official
bonds in favor of the sureties.  (Murfree on Official
Bonds, secs. 620, 710.)   The recovery upon an official
bond is limited to the amount of damage actually sus-
tained by the wrongful official act complained of.

*S. F. Leib,* for Respondent.

Where a notary public has intentionally given a
false certificate of acknowledgment, as a part of a scheme
to effect a fraud, he and his bondsmen are responsible.
(*People to the use of Doren* v. *Butler,* 74 Mich. 643; *Roche-
reau* v. *Jones,* 29 La. Ann. 82; *Curtiss* v. *Colby,* 39 Mich.
456; *Lesser* v. *Wunder,* 9 N. Y. Week. Dig. 56; *Kleinsorge*
v. *Meyer,* 2 Mo. App. 413; *State* v. *Leach,* 60 Me. 58; 11
Am. Rep. 172.)

SHARPSTEIN, J. — The defendants were sureties on the
official bond of a notary public by the name of Cordell.
Cordell, while acting as notary public, also acted as real
estate agent and broker in the purchase and sale of lands,
making loans, collecting interest, rents, etc.   The plain-
tiff upon several occasions employed Cordell as such
broker or agent to make loans for her, and in the pur-
chase of property, and often consulted him as to such
matters, and sometimes acted upon his advice in relation
thereto.   In several of the loans so made, Cordell pro-
duced to plaintiff a note and mortgage prepared and ac-
knowledged before himself, and she would then go with
Cordell to the bank and pay him the money for the bor-
rower, and Cordell would deliver to her the note and
mortgage.

Upon the 28th of August, 1885, he, then being a notary
public, exhibited to the plaintiff what purported to be a
note and mortgage signed by one Charles E. Wilson, for
the sum of one thousand dollars, the mortgage purport-
ing to be of certain lands in the county of Santa Cruz,
to secure the payment of the note.   To the mortgage

was appended by said Cordell, as notary public, a certificate of said Wilson's acknowledgment of the execution of said mortgage. Cordell represented to plaintiff that the note and mortgage were executed by said Wilson, and that he wished to borrow of plaintiff one thousand dollars thereon, and plaintiff thereupon received said note and mortgage, and paid to Cordell, for Wilson, the sum of one thousand dollars. Afterwards, on the 8th of April, 1886, said Cordell, still being a notary public, procured of plaintiff one thousand dollars upon what purported to be the note and mortgage of one Joseph Curtis. The mortgage purported to be upon lands in San Benito County, to secure the payment of said note of said Curtis. Said Cordell had attached to said mortgage a certificate of acknowledgment, made before him as a notary public, and attested to the same by affixing his official notarial seal thereto.

By means of said forged notes and mortgages, and the false certificates of acknowledgments attached to said mortgages, plaintiff was induced to receive said notes and mortgages, and place in the hands of said Cordell, for said Wilson and Curtis, two thousand dollars, which said Cordell fraudulently appropriated to his own use, and in the month of August, 1886, absconded, and has ever since been absent from the United States. Plaintiff did not know before the absconding of said Cordell, that said notes and mortgages were forged.

Upon the foregoing facts the court found that plaintiff was entitled to judgment against the defendants for the sum of two thousand dollars, and interest on one thousand dollars from August 28, 1885, and on the further sum of one thousand dollars from April 8, 1886. Judgment was entered accordingly.

From that defendants appeal. The only question presented here is, Do the facts found by the court support the judgment?

The facts found establish beyond any question the

civil and criminal liability of Cordell.   But the liability
of his sureties, the defendants, depends upon the terms
and conditions of the bond which they executed.

The sureties upon an official bond undertake for noth-
ing, which is not within the letter of their contract.
"The obligation is *strictissimi juris*, and nothing is to
be taken by construction against the obligors.   They
have consented to be bound to a certain extent only, and
their liability must be found within the terms of that
consent." (Per Cooley, J., in *Detroit Savings Bank* v.
*Ziegler*, 49 Mich. 157; 43 Am. Rep. 456.)

That is a clear and concise statement of a rule uni-
versally accepted, but as might naturally be expected,
courts have differed as to the delinquencies of the prin-
cipal for which the sureties made themselves liable.   The
defendants, in this case, undertook that said Cordell
should well and faithfully perform all the duties of his
said office as required by law and the requirements of
the statutes of this state, and faithfully execute and per-
form all the duties of such office required by any law to
be enacted subsequently to the execution of said bond.

The duty of notaries public is prescribed by the Po-
litical Code.   Among other things, they are required
"to take the acknowledgment or proof of powers of attor-
ney, mortgages, deeds, grants, transfers, and other instru-
ments of writing, executed by any person, and to give
a certificate of such proof or acknowledgment indorsed
on or attached to the instrument." (Pol. Code, sec. 794.)
It is for a breach of the duty enjoined on their principal
by this clause that the defendants are held to be liable
to the plaintiff, by the court below.   The code provides
that "for the official misconduct or neglect of a notary
public, he and the sureties on his official bond are liable
to the parties injured thereby for all the damages sus-
tained." (Pol. Code, sec. 801.)

It is no part of the duty of a notary public to receive
money from or for anybody.   It was misconduct, but

not *official* misconduct, to fraudulently obtain it. And it is only against his official misconduct that the sureties consented to indemnify persons injured thereby. He did not receive any money in his official capacity.

Under a law of the state of New York, a supervisor, before entering upon the discharge of his duties as such, was required to give a bond, with sureties, for the faithful discharge of his official duties as such supervisor during his term of office, and well and truly keep and pay over and account for all moneys belonging to his town and coming into his hands as such supervisor. The board of supervisors of Madison County, by resolution in due form, as authorized by law, levied the sum of fifteen hundred dollars upon the town of Sullivan, in that county, for the temporary relief of the poor of that town, and fifty-two dollars for highways and bridges, and in the warrant attached to the tax roll of the town directed the collector to pay said sums to the supervisor of said town, which he did; but the supervisor did not account for or pay over the whole of said sum, and appropriated a portion thereof. An action upon his official bond for the recovery of the amount so appropriated was prosecuted against his sureties, and a judgment against them for said amount was entered against the defendants, and affirmed by the supreme court, and reversed on appeal, by the court of appeals. In the opinion of the court of appeals, it is said that "the only objection to the recovery is, that the moneys for which a recovery was had are not within the condition of the bond." After quoting said condition, as before stated herein, and the statutes relating to the raising of moneys in towns for the support of highways and bridges, and the poor, the opinion proceeds: "The supervisor has no authority, under the law, to receive moneys, even in trust, raised by tax for the support of highways and bridges, or of the poor. Moneys raised for such purposes are expressly excluded from those which he is authorized to receive or pay over."

Further on in the opinion, the court says: "The principal in the bond received, officially and as supervisor, precisely what the law authorized him to receive, and no more. The appellant, in becoming surety upon the official bond of the supervisor, must be supposed to have known the law, and the limit and extent of the liability in his case assumed." The judgment of the court below was reversed. (*People* v. *Pennock*, 60 N. Y. 421.)

In *Welsh* v. *McVeagh*, 2 Hailes, 876, John Syme, messenger, was intrusted by Welsh with letters of horning and caption against one of his debtors. Instead of attaching the debtor's effects by poinding, the messenger received them from the debtor himself, sold them by public roup, to the extent of the debt, and applied the proceeds to his own use. He became insolvent, and Welsh, the creditor, pursued McVeagh, his cautioneer, for the debt. "The lords found the cautioneers only liable for the messenger's faithful execution of his office, but not for any money allowed to come into his hands."

In the case at bar, the judgment against the sureties is for money which their principal fraudulently obtained from the plaintiff. It was not in the line of his official duty to receive money from any one for any purpose. His receiving it was purely a voluntary act on his part, and one for which his sureties did not agree to be liable.

The contention of respondent's counsel is, that the sureties are liable because there was attached to the counterfeit mortgages a false certificate of their principal, as notary public, of the due acknowledgment of the execution of said mortgages by the persons whose names had been forged to them, and that but for that certificate the money received by said principal would not have been delivered to him. But it was no part of his official duty to receive money upon valid notes and mortgages, and if these notes and mortgages had been valid, and he had received money from the mortgagee for the mortgagors, and neglected to give it to the mortgagors, we think

no one could contend that the defendants would be liable for such misconduct of their principal to any one who might be injured thereby.

The official misconduct for which the defendants were liable to any one who was injured thereby consisted in his making and attaching to the counterfeit mortgages certificates of their due acknowledgments. And the plaintiff is not entitled to recover any more than her loss, by reason of said certificates being false instead of true. If the mortgages had been valid in every respect, their value as securities would have depended upon the value of the mortgaged property. If its value had been as great or greater than the sums secured by them, then the loss to the mortgagee might, in case of a false or fatally defective certificate of acknowledgment, be equal to the sums secured to be paid by said mortgages. Otherwise they might be of less value, or no value at all, as in the case of *McAllister* v. *Clement*, 75 Cal. 182, in which the finding was, that the property mortgaged was wholly valueless, and that plaintiff had not suffered any damage by reason of the defective certificate of acknowledgment. The judgment in that case, in favor of the defendants, was affirmed by this court, on the ground that no action will lie to recover damages if no damages have been sustained. In that case the mortgage was given to secure the payment of a promissory note for six hundred dollars. In that case the court found that the mortgaged property was valueless. In this case it did not find that it was of any value. And that distinguishes this case from *People* v. *Butler*, 74 Mich. 643, which more strongly supports respondent's contention than any other cited in her behalf. In that case it was found to be of sufficient value to constitute good security for the loan.

If, as we have no doubt, the liability of the defendants is limited to losses sustained through the official misconduct of their principal, the judgment in this case is clearly

erroneous. The official misconduct consisted in certifying falsely to the acknowledgments of the mortgages. The defendants are liable only for what would be the value of those mortgages if valid. The court has not found that they would be of any value if valid. Therefore the proper basis for determining the liability of the defendants is wanting. The findings do not support the judgment, and it must be reversed.

Judgment reversed.

DE HAVEN, J., HARRISON, J., GAROUTTE, J., and BEATTY, C. J., concurred.

PATERSON, J.—I concur in the judgment, on the ground last stated in the opinion.

McFARLAND, J., dissented.

Rehearing denied.