[Civ. No. 1482.   Fourth Appellate District.—December 14, 1934.]

HEMET HOME BUILDERS ASSOCIATION (a Corporation), Respondent, v. FRANK H. WELLS et al., Defendants; INDEMNITY INSURANCE COMPANY OF NORTH AMERICA, Appellant.

Joe Crider, Jr., and Clarence B. Runkle for Appellant.

Albert Ford for Respondent.

JENNINGS, J.—This is an appeal by the defendant Indemnity Insurance Company of North America, surety on the official bond of the defendant Frank H. Wells, as notary public, from a judgment rendered in plaintiff's favor in an action brought by plaintiff to recover damages alleged to have been sustained by plaintiff by reason of the official misconduct of Wells as a notary. This misconduct consisted in the making of false certificates of acknowledgment which were attached to three trust deeds that were received by plaintiff as security for the payment of three promissory notes drawn in plaintiff's favor as payee. The judgment in plaintiff's favor was in the sum of $5,000, which was the full penal amount of the bond.

The undisputed facts established by the evidence produced during the trial showed that the defendant Wells was not only a notary public but was also a licensed real estate broker and the president of the defendant Riverside County Title Guaranty Company and that he acted in the capacities of real estate broker and president of the title company in carrying out the transaction whereby plaintiff suffered a loss of $11,000.

The details of this transaction are as follows: On or about October 6, 1930, Wells, acting in the capacity of real estate broker, submitted to plaintiff three applications for loans to be secured by trust deeds on three different parcels of land. These applications were accepted and acted upon and were formally approved by plaintiff's board of directors on November 14, 1930. In consummating the loans, the defendant title company was used as the depositary for the trust deeds that were to be executed as security for the repayment of the loans and of the money which was to be advanced by plaintiff on such security. The title company was employed to furnish a certificate of title as to each parcel of land and the plaintiff instructed the title company that each of the trust deeds which it proposed to take must be a first lien on the real property described therein. In accordance with these instructions plaintiff received three certificates of title executed by the title company which showed title in each parcel supporting each trust deed. Plaintiff

had no actual notice of the condition of the title of any of the property mentioned in the trust deeds and relied entirely on the certificate of title thus furnished. The defendant Wells personally dictated, prepared and signed the three certificates of title which were furnished to plaintiff. In advancing the loans, the plaintiff issued three checks, each of which was made payable to the order of the defendant title company. For convenience the three trust deeds which were furnished to plaintiff will be denominated the Williams trust deed, the Shaw trust deed and the Crawford trust deed. The certificate of title as to the land described in the Williams trust deed showed that title to the land was vested in Herbert P. Williams and Mary A. Williams. The title certificate as to the land described in the Shaw trust deed showed that title to the land was vested in Henry J. Shaw. The title certificate as to the land described in the Crawford trust deed showed that the title to this land was vested in James M. Crawford. As a matter of fact, at no time was the legal title or any title of any kind in any of the land vested in any of the parties stated in the certificates and the names "Williams", "Shaw" and "Crawford" were purely fictitious names adopted by the defendant Wells. In furtherance of his fraudulent scheme, Wells prepared three trust deeds which purported to be signed by the parties in whom the title to the land described therein was shown to be vested by the aforesaid title certificates and to each of said trust deeds he attached a certificate of acknowledgment wherein he stated that the persons whose signatures were affixed to the trust deed and who were known to him to be the persons whose names were subscribed to the instrument had personally appeared before him and had acknowledged that they had executed the instrument. To each of such certificates Wells affixed his signature as a notary and upon each certificate he impressed his notarial seal. It appeared, however, that Wells not only prepared the trust deeds but that he also himself signed the instruments using the names of the aforesaid fictitious persons and himself acknowledged the execution of the trust deeds in the names of such fictitious persons before himself as notary. When the three trust deeds were delivered to plaintiff as the final step in the consummation of the loan transaction each instrument bore the stamp of the county recorder purporting to show

that the instrument had been duly recorded. The fact was, however, that none of the trust deeds had been recorded and the recorder's stamp in each instance had been severed from a document which had been recorded and was pasted on the outer cover of the trust deed in which plaintiff was designated as the beneficiary.

■ The chief contention advanced by appellant as a ground for reversal of the judgment in respondent's favor is that the above-mentioned facts show that the misconduct of its principal, the notary Wells, was not the proximate cause of the loss suffered by respondent. It is pointed out that Wells acted in the transaction not only as a notary but also in the capacity of a real estate broker and as the president and controlling officer of the title company and it is urged that it was his action in the two. latter capacities, particularly his action in receiving the money which was not done in his capacity as notary public, that was the efficient cause of respondent's loss. The contention is devoid of merit. The trial court specifically found that the certificates of acknowledgment executed by appellant's principal were each and all false, were known by the notary to be false and were made by the notary for the purpose of deceiving and defrauding respondent, that respondent relied upon the certificates and was thereby defrauded of the sum of $11,000 and that respondent would not have parted with said sum but for the certificates of acknowledgment. Examination of the record demonstrates that the evidence was ample to support this finding. It is idle, therefore, to argue that the delinquency of appellant's principal in making the false certificates was not an efficient cause of the loss which respondent sustained. ■ No burden rested upon respondent to show that this delinquency was the sole cause of its loss. It is apparent that the making of the false certificates was an integral part of the plan and scheme which the defendant Wells had evolved for the purpose of defrauding respondent and that, under the circumstances disclosed by the record, it operated directly to cause the damage which respondent suffered. This was entirely sufficient to demonstrate that the conceded official delinquency of appellant's principal was a proximate cause of respondent's loss (*Kleinpeter* v. *Castro*, 11 Cal. App. 83 [103 Pac. 1090]; *Luttrell* v.

*Columbia Casualty Co.*, 136 Cal. App. 513, 516 [28 Pac. (2d) 1067]).

Appellant also contends that the trial court erred in permitting respondent to recover substantial damages because it is said that even if the signatures of the persons whose names appear in the certificates of acknowledgment had been genuine respondent would nevertheless have suffered exactly the same damage, since it appeared that none of these persons owned any interest in any of the land described in the trust deeds. In other words, it is contended that the trust deeds were valueless and that consequently the notary's certificate contributed nothing to this condition.

It is not easy to differentiate this second contention from the first. In the final analysis, although it is offered as an attack upon the measure of damages applied by the trial court, it resolves itself into a contention that it was the action of the defendant Wells in his capacity as real estate broker and not his official misconduct as a notary public which was the proximate cause of respondent's loss. Viewed in this aspect appellant's second contention would merit no further consideration since, as heretofore indicated, we entertain a definite opinion that the official delinquency of appellant's principal was a proximate cause of respondent's loss.

There are, however, certain authorities which appear to lend support to the second contention advanced as an attack upon the measure of damages applied by the trial court. These authorities must therefore be examined for the purpose of determining their applicability to the problem which is here presented.

The first of the cases upon which appellant relies as sustaining its second contention is *McAllister* v. *Clement*, 75 Cal. 182 [16 Pac. 775]. In this case the delinquency of the notary, for which it was sought to impose a liability upon his sureties, consisted in the failure to state in the certificate the year in which the acknowledgment was taken and to insert in the body of the certificate "the name and quality of the officer" who made it. The negligence of the notary in these respects was alleged to have destroyed the efficacy of the lien of the mortgage to which the notary's certificate was attached and thus to have caused the loss which the plaintiff sustained. The mortgage to which the notary's

certificate was attached was a chattel mortgage upon a certain crop. Unfortunately for the plaintiff in that case the trial court specifically found that the crop which was the subject of the mortgage ''was not valuable, and was and is wholly valueless'' and drew the legal conclusion therefrom ''that plaintiff has. not suffered any damage or loss by reason of the act or acts of defendants''. Judgment was therefore rendered in favor of the defendants. On appeal therefrom the judgment was affirmed, the court remarking that ''it is clear that no action will lie to recover damages if no damages have been sustained''. This declaration of an abstract legal principle is unassailable and there can be no doubt that it was correctly applied to the facts which were disclosed by the record. Although the court's language emphasizes the impossibility of recovering damages when the facts show that no damage occurred and would thus appear to be apropos to the subject of damages, it may with equal propriety be considered as authority in support of the recognized principle that negligence to be actionable must be shown to have been a proximate cause of the damage. In the cited case the notary was concededly negligent but his negligence was not a proximate cause of loss for the simple reason that the subject of the mortgage to which the defective certificate was attached was wholly valueless. The fact that the crop had no value was therefore the proximate cause of the plaintiff's loss and it did not appear that the notary's negligence contributed in any way thereto. In the instant case, the fraud of the notary was a proximate cause of the loss which the respondent suffered.

The second authority upon which appellant relies is *Heidt* v. *Minor*, 89 Cal. 115 [26 Pac. 627]. The facts of this case are strikingly similar to those which are present in the instant case. One Cordell, who was a notary public, also acted as a real estate agent and broker. The plaintiff had often employed Cordell to make loans for her. In several of the loans which she made through Cordell the latter produced a note and mortgage which had been prepared by him and having attached to the mortgage his certificate as a notary stating that the signers of the mortgage had acknowledged before him as notary that they had executed the instrument. On two occasions Cordell exhibited to plaintiff what purported to be notes and mortgages of certain persons

whose names were attached thereto as signers. Each mortgage bore a certificate wherein Cordell as notary stated that the person who had signed the instrument had duly acknowledged its execution. It developed that these particular notes and mortgages were forged and that by means of such forged instruments and the false certificates of acknowledgment attached thereto the plaintiff was induced to receive them and to pay to Cordell, for the persons who had apparently executed the mortgages, certain sums of money which Cordell appropriated to his own use. The plaintiff sought to recover from the sureties on Cordell's bond as notary the amount of her loss. Judgment was rendered in plaintiff's favor by the trial court. On appeal by defendants the judgment was reversed. The ground of the court's decision was that the trial court had failed to find that the mortgages which the plaintiff received would have had any value if they had been valid and that by reason of this failure the proper basis for determining the liability of the defendants was wanting. That this was the sole ground of the decision is made clear by the Supreme Court in its opinion in *Heidt* v. *Minor*, 113 Cal. 385 [45 Pac. 700, 701]. This was the same case as that in which the former decision was rendered. Upon reversal of the judgment in plaintiff's favor the case was retried and judgment in plaintiff's favor was again rendered. The defendants again appealed and contended that it had been decided on the first appeal that the value of the mortgage, if it had been valid in every respect, would have depended on the value of the mortgaged property and that this proposition became the law of the case. In response to this contention the Supreme Court conceded that the former opinion contained language which afforded justification for the position taken by appellants. The court then proceeded as follows: "But the 'law of the case' consists, not in the reasoning of the court or the illustrations given, but in the propositions of law actually decided and applicable to the facts in judgment. The only propositions of law decided on that appeal, so far as this matter is concerned, and the only ones which, on the facts then before the court, could have been decided, were: that the defendant is liable only for what would be the value of the mortgage if valid; that the court had not found that it would be of any value if valid; and that, therefore, the

proper basis for determining the liability of the defendant was wanting. (See *Heidt* v. *Minor, supra.*) All beyond this was mere reasoning and illustration.''

The above analysis of the opinion rendered on the first appeal of *Heidt* v. *Minor, supra,* is warranted because of the fact that this opinion contains language which indicates that the surety on the official bond of a notary public cannot be held liable when the notary also acts as a real estate broker and receives money in such capacity from a person whom he defrauds by means of forged mortgages having attached thereto false certificates of acknowledgment taken by the notary. The court, after adverting to the familiar principle of the law of suretyship that the obligation of sureties on an official bond is *strictissimi juris,* declared that it is no part of the duty of a notary public to receive money from or for anybody and that, although the receipt of the money by the notary was misconduct, it was not official misconduct to have obtained the money fraudulently and that it was only against official misconduct that the sureties on the notary's bond had consented to indemnify persons injured thereby. This situation so strikingly parallels that which is presented in the instant case that the language used in connection therewith would appear to be peculiarly apropos. However, although the court's language indicated an opinion that the sureties on the notary's bond would not be liable for the misconduct of the notary in fraudulently obtaining and misappropriating the money entrusted to him, since it was not official misconduct for which alone the sureties were bound, it must nevertheless be observed that the judgment rendered in plaintiff's favor was reversed solely because the trial court had failed to find that the mortgages would have had any value if they had been valid. The later decision in *Heidt* v. *Minor, supra,* affirmed a judgment in favor of the plaintiff since it appeared that, upon the going down of the *remittitur* on the first appeal, plaintiff had amended her complaint to allege that the supposed mortgagor did not own any of the land embraced by the mortgage but that he was solvent and able to pay the note set out in the mortgage and would have paid it if the mortgage had been genuine. It was then held in the later opinion that the presence in the case of the new facts alleged in plaintiff's amendment made the case substantially different from that presented on

the first appeal and that these new facts supplied the defect in the findings which had caused the reversal of the former judgment. The later decision is therefore authority in support of the judgment herein and because of the striking factual similarity to the instant case is directly in point.

The third authority cited by appellant and the one on which it places particular reliance is *Ross* v. *New Amsterdam Casualty Co.*, 56 Cal. App. 254 [205 Pac. 43]. In this case the trial court sustained a general demurrer to the plaintiff's complaint without leave to amend. Plaintiff appealed and the judgment which had been rendered in favor of the defendants was affirmed. The action was instituted by plaintiff to recover damages from a notary public and the surety on his official bond. The allegations of the complaint showed that on a specified date the plaintiff had paid to one Gladys Steele the sum of $650 as the purchase price of an automobile which she represented as being her property and which she had purchased from one John Reed. As an inducement to the purchase of the automobile she presented to plaintiff a bill of sale of the automobile which purported to be signed by Reed and which she represented she had received from him. The bill of sale was in the usual form of such an instrument but there was attached to it a certificate of acknowledgment executed by the notary wherein it was certified that John Reed, known to the notary to be the person described in the instrument and whose name was subscribed thereto, had appeared before the notary and had acknowledged that he had executed the bill of sale. It was further alleged that plaintiff relied on the bill of sale and particularly on the notary's certificate of acknowledgment and paid to Gladys Steele the sum demanded by her as the purchase price of the automobile and that it then developed that John Reed was a fictitious person who had never appeared before the notary or acknowledged the execution of the instrument and that the notary's certificate was false and fraudulent and was made by the notary for the purpose of enabling Gladys Steele to represent that she owned the automobile and had purchased it from John Reed. It was further alleged that the automobile was in fact stolen property and that it was subsequently reclaimed by the true owner, whereby plaintiff was

damaged in the amount which he had paid as the purchase price of the automobile.

In affirming the judgment the appellate court observed, first, that a notary does not, by a certificate of acknowledgment, certify to the ownership of the property in the person who executes the instrument to which the notary's certificate is attached and that, assuming the fact to be as alleged in the complaint that the notary committed a breach of duty as such officer in falsely identifying by his certificate John Reed as an actual person who had executed the bill of sale for which breach the notary and his surety would be liable to any person injured thereby, the question still remained as to what injury the plaintiff had suffered by the notary's wrongful act. The court then stated that this question might be answered by inquiring as to what advantage it would have been to plaintiff if the notary's certificate had been true in all respects. The complaint alleged that neither John Reed nor Gladys Steele had ever owned the automobile, so that a bill of sale to plaintiff from either or both could not have operated to transfer any title in the property to plaintiff and therefore plaintiff could have received no title to the property if John Reed had actually existed and had in fact executed the bill of sale and acknowledged its execution. The court then propounded the inquiry as to how plaintiff could be said to have sustained any damage from the alleged fact that John Reed was a purely fictitious person and that his purported bill of sale was falsely acknowledged and certified to by the notary. It was then declared that the precise situation disclosed by the complaint was covered by the case of *Heidt* v. *Minor*, 89 Cal. 115 [26 Pac. 627], and by the principle applied in *McAllister* v. *Clement*, 75 Cal. 182 [16 Pac. 775].

The foregoing analysis of the cited case demonstrates that at least the language of the opinion is favorable to appellant's contention that the trial court erred in permitting recovery of substantial damages. It remains to discover whether the cited case is fairly distinguishable from the facts presented on this appeal. It is our opinion, based on careful analysis of the Ross case, that there is at least one point of differentiation which clearly distinguishes it from the instant case.

This point of distinction has to do with the legal effect of a notary's certificate of acknowledgment. In the Ross case the notary's certificate was attached to a bill of sale, an instrument which is not required to be acknowledged and to whose validity nothing was added by reason of the presence of the acknowledgment. Since the acknowledgment of the instrument was immaterial the notary's action in attaching to the document a false certificate contributed nothing to the defectiveness of the bill of sale and could not of itself be the cause of the loss which the plaintiff sustained. In the instant case the certificates of acknowledgment were attached to trust deeds covering real property. These instruments were not entitled to recordation unless the makers had first acknowledged that they had executed them. When, therefore, the notary, appellant's principal, falsely certified that the persons whose names were signed to the trust deeds had appeared before him and being known to him had acknowledged that they had executed the instruments, he was guilty of a palpable fraud which was committed by him in his capacity as notary with respect to a matter that bore directly upon the efficacy of the trust deeds. The instruments were thus made to appear as valid trust deeds executed by the persons who owned the land and properly recorded so that they constituted valid liens upon the real property described therein.

In the final analysis the problem here resolves itself into a question of whether or not the notary's action in attaching false certificates of acknowledgment was a proximate cause of respondent's loss. The trial court found that it was and we have heretofore indicated our opinion that this finding is not lacking in evidentiary support. Since this is true, the liability of appellant is determined by section 801 of the Political Code, which provides that "For the official misconduct or neglect of a notary public, he and the sureties on his official bond are liable to the parties injured thereby for *all the damages sustained.*" (Italics ours.) In *Hungate* v. *Wells,* 129 Cal. App. 133 [18 Pac. (2d) 64, 65], it is correctly said that "It has been repeatedly held in California that when a notary public assumes his office he is required to perform his duties with honesty, integrity, diligence and skill. His bond is executed for the purpose of protecting those who may suffer by his dishonesty and the

bondsman is liable for damages resulting from the fraudulent acts of the notary committed in the performance of his duties. The notary and his surety are liable for the negligence of the notary in taking an acknowledgment or for making a false certificate of acknowledgment. (*Joost* v. *Craig*, 131 Cal. 504 [63 Pac. 840, 82 Am. St. Rep. 374]; *Anderson* v. *Aronsohn*, 181 Cal. 294 [184 Pac. 12, 10 A. L. R. 866].)'' The same principle was declared in this state in 1858 in the case of *Fogarty* v. *Finlay*, 10 Cal. 239, 245 [70 Am. Dec. 714], and it was further there held that the measure of damages to be applied in the case of a notary who has failed in the performance of the duty imposed by law upon him and whose failure has resulted in loss to one who has relied upon the notary's proper and skilful performance of such duty is ''the amount of the debt and interest intended to be secured by the mortgage''.

The case of *Homan* v. *Wayer*, 9 Cal. App. 123 [98 Pac. 80], is enlightening upon the general problem which is presented when liability is sought to be fastened upon the surety of a notary who has failed properly to perform the duty imposed upon him by law. In that case one Overholtzer had introduced to the notary an impostor who falsely represented herself to be the person who owned the land described in a deed. The notary carelessly attached to the deed a certificate wherein he certified that the person who falsely assumed the name of the true owner was known to him to be the person whom she represented herself to be. Overholtzer, who had assumed the name of Anderson and who was named as grantee in the deed, then sold the land to the plaintiff, who paid the purchase price, relying upon the correctness of the notary's certificate. The trial court rendered judgment against the surety on the notary's official bond. On appeal it was contended that Overholtzer and the person who had impersonated the true owner of the land had aided in the fraudulent transaction and had materially contributed to plaintiff's loss. The contention did not prevail, the appellate court remarking that the liability of the notary and his surety could not be thus relieved if it appeared that the plaintiff had relied upon the false certificate when paying out his money. ▆ It was pointed out that no *official* act of the notary in certifying an acknowledgment to a deed can ever alone result in injury to anyone, but

that the interposition of fraudulent action on the part of others does not operate to relieve the notary and his surety when it is made to appear that the defrauded person has relied upon the notary's certificate. Certainly, if the liability of the notary's surety is not relieved by the fact that others who planned and carried into execution the fraudulent scheme have imposed upon the notary, who is unaware of the fraud, to procure a false certificate which is attached to the deed, there is slight reason to contend that it is relieved when it appears that the notary was himself the sole actor in the fraudulent scheme whereby respondent suffered the loss of which complaint is made. The very recent decision of Division Two of the First Appellate District in the case of *California Pacific Title & Trust Co.* v. *MacArthur*, reported in 1 Cal. App. (2d) 323 [36 Pac. (2d) 413], is directly in point with respect to appellant's contention that the notary's misconduct was not the proximate cause of respondent's loss. Factually similar to the instant case and an authority frequently cited in actions in which liability for a notary's misconduct is sought to be fastened upon the surety on the notary's official bond is the case of *State* v. *Ogden*, 187 Mo. App. 39 [172 S. W. 1172]. In this case one Ogden, who was a notary public, was also engaged in the real estate insurance and loan business and represented to the plaintiff that he had a customer who owned land in a certain locality and that this customer wished to secure the loan of a certain amount of money on the security of the land. Subsequently Ogden came to plaintiff and exhibited to him a note made payable to plaintiff purporting to be signed by the customer and his wife, also a deed of trust which appeared to be signed by the same persons and which had attached to it a certificate of acknowledgment made by Ogden as notary. It developed that the persons whose names were signed to the note and trust deed were purely fictitious and that the signatures of such persons appearing on the instruments had been forged by Ogden and that Ogden's certificate of acknowledgment was false. In a suit by the plaintiff against Ogden as notary and the surety on his official bond, judgment was rendered against the surety for merely nominal damages. On appeal the judgment was reversed. In support of the judgment it was urged by the surety on the appeal that no loss had

resulted to the plaintiff by reason of any official misconduct of the notary since even if the notary's certificate had been true plaintiff's loss would have been the same due to the fact that the persons whose names were signed to the trust deed did not own any interest in the land described therein. The court's opinion disposes of this contention in the following language: ''We think that this is putting the cart before the horse, and that under the undisputed evidence, the proposition should be reversed; and the true statement is that, if it had not been for the notary's fraudulent certificate, no money would have been lent upon the deed, and consequently none would have been lost. Even if the Harveys had existed and had owned the land, and relator had personally known those facts, still he would not have loaned the money without the certificate of acknowledgment. And if the certificate were untrue, then the Harveys, even if they had owned the land, would not have been bound by the deed, and relator would have lost his money the same as he has now when the Harveys are mythical and do not own the land. The notary's duty under the law, as we have seen, is to certify to acknowledgments with integrity. If he had acted with integrity, he could not have made this certificate at all, because there were no such persons to appear before him and make the acknowledgment, and, had it not been for the false certificate, the money would not have been lent, and in that event there would have been no loss.''

It must be conceded that authorities are not lacking to support appellant's contention that in an action of this character where the notary has himself forged the names of fictitious persons to trust deeds or similar instruments and has attached to such instruments a false certificate of acknowledgment no liability may be imposed upon the surety on the notary's official bond for the reason that no loss occurred by reason of the notary's official misconduct. It is our opinion, however, that the rule which is supported by the weight of authority and the rule which undoubtedly prevails in California is that in accordance with section 801 of the Political Code the surety is liable for all damages sustained by reason of the official misconduct of the notary and that when it is made to appear that such misconduct was the proximate cause of the damage which

has resulted, it may not successfully be urged that no damages are recoverable because the instruments were valueless irrespective of the presence of the false certificates of acknowledgment.

■ Appellant's final contention is that the judgment herein, which was for the full penal amount specified in the notary's official bond executed by appellant as surety, is excessive because it was shown that, prior to the entry of the judgment from which this appeal has been prosecuted, appellant had been compelled to pay the sum of $500 in satisfaction of one judgment obtained on the same bond which forms the basis for the instant action and a further sum of $1274.30 in satisfaction of another judgment obtained upon the same bond. Respondent concedes that in accordance with the opinion in *Wiggins* v. *Pacific Indemnity Co.*, 134 Cal. App. 328 [25 Pac. (2d) 898], the judgment is excessive and must be reduced by subtracting therefrom the sum of $1500 which represents the principal amount of the two obligations which were imposed upon appellant in the former suits. Respondent does not, however, concede and objects to the further reduction of the judgment in the additional amount of $274.30. This last-mentioned amount is shown to have been made up of the sum of $103.24, which was allowed as interest in the case of *Hungate* v. *Wells, supra,* and the further sum of $52.65 allowed as costs of the action and the additional sum of $118.41, which was presumably additional interest that accrued pending the appeal taken by the surety from the judgment in *Hungate* v. *Wells, supra.*

It is our opinion that respondent's objection to further reduction of the judgment in the amount last specified is proper. Appellant makes no contention that the allowance of interest and costs in the prior action of *Hungate* v. *Wells, supra,* was incorrect. Having unsuccessfully defended that action in the trial court and having thereafter unsuccessfully prosecuted an appeal from a judgment which properly included interest and costs, it paid the amount of the judgment, together with the interest which had accrued pending the appeal and now seeks to charge the amount which it paid as costs of suit and interest on its obligation to the plaintiff in said action against this respondent. We know of no legal or equitable principle which would permit respondent thus to be penalized. Obviously, it was determined in the prior

action that appellant was bound by the terms of its contract of suretyship to respond in damages to a plaintiff who had sustained loss through the official misconduct of appellant's principal. Appellant could have avoided the payment of costs and interest by paying the principal sum of $1,000 on demand of the plaintiff in the former action. It chose instead to refuse the demand and to defend the suit which was brought to enforce payment of the amount demanded. Having taken this chance and having been compelled to pay an additional amount due to its action in making necessary the prosecution of a suit to enforce collection of the sum demanded it may not now charge against another innocent party who has suffered damage through the official misconduct of its principal the amount properly assessed against it by way of costs and interest in the former action.

The judgment herein is therefore modified by subtracting from the sum of $5,000, the principal amount thereof, the sum of $1500 and from the sum of $521 allowed as interest on the above-mentioned principal, the sum of $156.63, representing interest on said above-mentioned sum of $1500 at the rate of seven per cent per annum from the date specified by the trial court in its conclusions of law up to the date on which the judgment was rendered.

As thus modified the judgment from which this appeal has been taken is affirmed. Each party will pay its costs of appeal.

Barnard, P. J., and Marks, J., concurred.

A petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on February 11, 1935.