[Civ. No. 38742. Second Dist., Div. Four. May 23, 1972.]

ROBERT TUTELMAN et al., Plaintiffs and Appellants, v. AGRICULTURAL INSURANCE COMPANY et al., Defendants and Respondents.

## COUNSEL

Alan D. Block for Plaintiffs and Appellants.

Jones & Wilson and Roy Harper for Defendants and Respondents.

## OPINION

**KINGSLEY, J.**—This is an action against two corporate sureties for damages allegedly caused by the official misconduct of a notary public.[1] The action seeks judgment against the sureties on two notary public bonds, which were required by the provisions of section 8212 of the Government Code.

After respondent-defendants' demurrer to the complaint was sustained with leave to amend, plaintiffs filed a first amended complaint. The demurrer to the first amended complaint was sustained with leave to amend and plaintiffs filed a second amended complaint. The demurrer to the second amended complaint was sustained without leave to amend on the ground

---

[1] The complaint was in ten counts, nine against the Kapsinows and the tenth against the two bondsmen. We are here concerned only with the tenth cause of action.

that plaintiffs failed to state facts sufficient to state a cause of action.[2] Plaintiffs appeal from the order of dismissal.[3]

■ The only issue before the court is whether the demurrer was properly sustained on the ground that the alleged official misconduct of the notary public could not have been the proximate cause of the damage sustained by plaintiffs.

Defendants Florence and Arnold Kapsinow were licensed real estate brokers. Florence Kapsinow was also a licensed notary public. On April 25, 1961, defendant Anchor Casualty Company delivered its official bond as surety for Florence Kapsinow in her capacity as a notary public in the sum of $5,000. On April 25, 1965, the day following the termination of the Anchor bond, defendant Agricultural Insurance Company delivered a similar bond for $5,000 covering a period beginning on April 25, 1965, and terminating April 24, 1969.[4]

Plaintiffs alleged that defendant Florence Kapsinow, with intent to defraud plaintiffs, through the use of her powers as a notary public, prepared certain trust deeds and certain assignments of trust deeds, purporting to have been executed on various dates by various trustors. After preparing the false trust deeds and assignments of deeds of trust, defendant Florence Kapsinow affixed to each document a certificate of acknowledgment, signed each document, and affixed her official seal as notary public. In these deeds fictitious beneficiaries purported to assign their right, title and interest to plaintiffs. In fact no such persons ever appeared before defendant Florence Kapsinow.

Plaintiffs alleged that the false notes and deeds of trust were created in the names of fictitious persons as makers and beneficiaries and involved fictitious properties as security for the deeds of trust. Plaintiffs alleged that defendants committed these acts as part of a fraudulent scheme and plan, and that these acts proximately caused damages to plaintiffs.

[2]As stated in footnote 1, only the tenth cause of action involved the bondsmen; they jointly demurred to that cause of action; the order of dismissal dismissed as to the bondsmen only. As far as we are advised, the action is still pending against the Kapsinows.

[3]The Notice of Appeal purports to be both from the order of dismissal and from a "judgment." The order of dismissal is itself an appealable judgment (Code Civ. Proc., § 581d) and is the only "judgment" appearing in the record before us. We disregard the surplusage in the notice.

[4]The various acts of alleged misconduct by the notary covered a period of time beginning in February 1965, and running to April 1969, thus involving each bondsman as to some but not as to all of the acts. No objection was raised in the trial court, or here, as to the joinder of several plaintiffs having independent claims or as to the joinder of the two bondsmen as defendants.

Plaintiffs alleged that, by virtue of the false acknowledgments, each document was recorded in the office of the county recorder, and each document thereby was made to appear valid. In reliance on the recording of each document, plaintiffs were led to believe that they were purchasing a valid deed of trust. Plaintiffs alleged that, but for Florence's act in fraudulently executing false certificates of acknowledgment, plaintiffs would not have parted with their money, nor would they have purchased the deeds of trust from defendants.

The defendants, respondents herein, argue that, since the underlying security was valueless, plaintiffs would have been damaged whether defendant Florence's acknowledgment was valid or invalid, and therefore the fraudulent acknowledgments did not proximately cause plaintiffs' loss. They also appear to be arguing that it was Florence's misconduct as a real estate broker and not her misconduct arising out of the discharge of her notary public duties that proximately caused plaintiffs' losses.

There is authority in California for the proposition that when an acknowledgment taken by a notary public is false, and the person signing the document is not the one he purports to be, and the purported signer of the instrument has no title, neither the notary nor the surety are liable because the purchaser would have received nothing even if the instrument were genuine. (*Heidt* v. *Minor* (1896) 113 Cal. 385 [45 P. 700]; *Heidt* v. *Minor* (1891) 89 Cal. 115 [26 P. 627]; *McAllister* v. *Clement* (1888) 75 Cal. 182 [16 P. 775]; *Ross* v. *New Amsterdam Casualty Co.* (1922) 56 Cal.App. 254 [205 P. 43].)

Other states have also held that, where the damages result from the inadequacy of the security or nonexistence of the property, the damages are not proximately caused by the false certificate of the notary public. (See, *Governor of Wisconsin* ex rel. *Mlekus* v. *Maryland Casualty Co.* (1927) 192 Wis. 472 [213 N.W. 287, 51 A.L.R. 1478]; and *Atlas Security Co.* v. *O'Donnell* (1930) 210 Iowa 810 [232 N.W. 121].)

However, more recent authority in California is to the contrary. In *Hemet Home Builders Assn.* v. *Wells* (1934) 3 Cal.App.2d 65 [39 P.2d 233], the notary made false certificates of acknowledgment attached to three trust deeds received by the plaintiff as security for three promissory notes. The title to the property was in fictitious parties. The notary had acted in a dual capacity and, in addition to making the false acknowledgments, he also acted as the real estate broker in the transaction. The bondsman argued that the fraudulent acknowledgments of the notary could not be the proximate cause of plaintiff's loss, where the trust deeds were valueless, and that the damage was proximately caused by defendant Wells'

action in his capacity as real estate broker, rather than by his action in his capacity as notary public. The court rejected the argument, finding the notary's conduct to be a proximate cause of plaintiff's loss.

The *Hemet* court distinguished *Ross* v. *New Amsterdam Casualty Co.*, *supra* (1922) 56 Cal.App. 254, finding that in *Ross* the notary's certificate was without legal effect because it was surplusage and added nothing to the bill of sale. The *Hemet* court said that a plaintiff need not show that the action of the notary in making false certificates was the *sole* cause of its loss, and the notary's act need only be *a* proximate cause of the damage. The court also held that where none of the persons owned any interest in the land described in the trust deeds, and as a result the trust deeds were valueless, the notary and his surety are nevertheless liable where the notary's action was *a* proximate cause of plaintiff's loss. The court reasoned that the "making of the false certificates was an integral part of the plan and scheme," which defendant had evolved for the purpose of defrauding respondent and that was sufficient to show that the "official delinquency of appellant's principal was a proximate cause of respondent's loss." The *Hemet* court also found that, where defendant's conduct as a real estate broker joined with defendant's conduct as a notary public to produce the loss to the plaintiff, the surety is nevertheless liable to plaintiff because the principal's conduct as notary in making false certificate was "an efficient cause of the loss." The *Hemet* court relied on *Homan* v. *Wayer* (1908) 9 Cal.App. 123 [98 P. 80], which said at page 128, "No *official* act of the notary in certifying an acknowledgment to a deed can alone result in injury to anyone. The deed cannot become the means of defrauding anyone until used in some transaction entirely outside of the official duties of the notary." [Italics in original.]

Other cases in this state and in other states have also held that official misconduct of the notary public need not be the sole proximate cause of plaintiff's loss, and it is sufficient that the official misconduct is a proximate cause that, together with other causes, joined in producing the damage. (*McDonald* v. *Plumb* (1970) 12 Cal.App.3d 374 [90 Cal.Rptr. 822]; *Jordan* v. *O'Connor* (1950) 99 Cal.App.2d 632 [222 P.2d 322]; *Inglewood Park M. Co.* v. *Ferguson* (1935) 9 Cal.App.2d 217 [49 P.2d 305]; *Commonwealth* v. *United States Fidelity & Guar. Co.* (1950) 364 Pa. 543 [73 A.2d 422, 17 A.L.R.2d 943]; *Erie County United Bank* v. *Berk* (1943) 73 Ohio App. 314 [56 N.E.2d 285].)

A Kentucky court has also considered the problem of proximate cause where the damage is produced by a notary acting in a dual capacity. In the Kentucky case, as in the instant case, the notary acted as a notary and

also as the real estate broker in a fraudulent transaction. The court held that the surety was liable, concluding that the fraud of the notary in his capacity as real estate agent operated concurrently with his fraudulent act in his capacity as notary and both proximately cause the loss to plaintiff. (*Aetna Casualty & Surety Co. v. Commonwealth* (1930) 233 Ky. 142 [25 S.W.2d 51].)

The *Hemet* case and a case on which the *Hemet* court relied (*State* v. *Ogden* (1915) 187 Mo.App. 39 [172 S.W. 1172]), has been analyzed in California Surety & Fidelity Bond Practice (Cont.Ed.Bar 1969) page 383. The author states that *Hemet* and *Ogden* come to correct decisions but that the true basis for the decision is that "a notary and his surety are liable on the notary's official bond if the notary performs an official act as part of a scheme to defraud."

In the instant complaint plaintiffs alleged that the notary's false acknowledgment was part of a fraudulent scheme and plan. Plaintiffs alleged that the false acknowledgments enabled the trust deeds to be recorded in the office of the county recorder, and this caused the trust deeds to appear to be valid, inducing the plaintiffs to part with their money and to purchase the trust deeds from defendant brokers. Although it appears from the face of the complaint that Florence's conduct as a broker was also a cause of plaintiffs' losses, and although it also appears that the trust deeds were worthless, under the rule of *Hemet* we hold that plaintiffs have properly pled that Florence's conduct as a notary public was a proximate cause of plaintiffs' injuries.

The judgment (order of dismissal) is reversed with directions to overrule the demurrer.

Jefferson, Acting P. J., and Dunn, J., concurred.