[L.A. No. 30551. In Bank. May 12, 1976.]

ISELIN-JEFFERSON FINANCIAL COMPANY, INC.,
Plaintiff and Respondent, v.
UNITED CALIFORNIA BANK et al.,
Defendants and Appellants.

**COUNSEL**

Donnelly, Clark, Chase & Johnson and John A. Donnelly for Defendants and Appellants.

Loeb & Loeb and Robert M. Ruben for Plaintiff and Respondent.

## OPINION

**RICHARDSON, J.**—In this case we consider whether a notary public may be liable to a purchaser of accounts receivable for negligently acknowledging a forged signature on a guaranty agreement. We have concluded that liability may be imposed despite the potential insolvency of the person whose signature was forged.

The case was tried upon stipulated facts which are substantially as follows: On January 18, 1971, Iselin-Jefferson Financial Company (plaintiff) agreed for $76,001.48 to purchase from Rothchild Bros. Textiles, Inc. (Rothchild) accounts receivable due Rothchild from Robert S. Scott, Inc. (Scott). One of the conditions of the agreement was that plaintiff would receive written guarantees signed and acknowledged by the principals of Scott, namely, Dean Greenberg and William Durkin, their wives Edith Greenberg and Marilynn Durkin (Mrs. Durkin), and a corporate affiliate of Scott, Factory Yardage, Inc. (Factory).

On January 18, 1970, Durkin and Greenberg presented to an officer of the factoring division of United California Bank (UCB) guarantees bearing their signatures and that of Mrs. Greenberg and Factory, as well as the apparent signature of Mrs. Durkin. Durkin and Greenberg requested that the officer obtain a notarial acknowledgment of each of the signatures. Pursuant to this request, Harold S. Minden (Minden), an employee of UCB who was a qualified notary public, acknowledged the signatures on each of the guarantees. At the time Minden acknowledged the signature of Mrs. Durkin, she was neither present nor personally known to him. The officer of the factoring division informed Minden, however, that Mrs. Durkin had signed the guarantee and that he himself had compared Mrs. Durkin's signature thereon with other documents in UCB files. In fact, Mrs. Durkin had refused to sign the instrument and her signature was forged.

The guarantees completed in the above manner were transmitted to plaintiff on or about January 18, 1971, at which time plaintiff paid Rothchild for the Scott accounts. Scott made only one payment pursuant to the agreement and thereafter defaulted. Plaintiff thereupon filed the current action on the guarantees against all of the guarantors, and Minden, UCB, and Fidelity & Deposit Company of Maryland (Fidelity), the surety on Minden's notary bond. Default judgments were taken

against the Greenbergs, Durkin, and Factory. The remaining parties stipulated that Minden's conduct in acknowledging the signature of Mrs. Durkin constituted negligence and official misconduct under Government Code section 8214 (which establishes liability for injuries sustained as a result of a notary's acts of official misconduct or neglect). It was further stipulated that in engaging in this conduct, Minden acted for his employer, UCB, and within the scope of his employment, and that, both at the date of the purported execution of the guarantee and at the time of trial, Mrs. Durkin had no assets from which to satisfy any judgment which plaintiff might have obtained against her.

The trial court found that plaintiff relied upon Mrs. Durkin's guarantee and the notarial acknowledgment of her signature and would not have entered into the agreement to buy Scott's accounts receivable without such guarantee. On this basis and despite the fact that Mrs. Durkin would have been unable to respond to a judgment against her at the time of the trial, the court concluded that plaintiff's loss of $71,441.39 was proximately caused by Minden's negligence. It thereupon rendered judgment in that amount against Minden and UCB, and in the sum of $5,000 against Fidelity.

Defendants assert that since Mrs. Durkin's guarantee would have been valueless Minden's negligence did not proximately cause damage to plaintiff. We disagree for two reasons. First, the assumption that a judgment against Mrs. Durkin would have been valueless is not necessarily valid. Second, even if such a judgment would have been worthless, Minden's negligent act must be viewed as a proximate cause of plaintiff's injury because the act induced plaintiff to enter into an agreement it would not have otherwise made resulting in its substantial losses.

1. *The Value of the Judgment*

Although the parties have stipulated that Mrs. Durkin lacked assets from which a judgment could have been satisfied at the time of trial, it does not necessarily follow that a valid judgment against her would have been worthless. A judgment may be enforced for at least 10 years after the date of its issuance. (Code Civ. Proc., §§ 681, 685.) Any number of fortuitous circumstances might occur within this 10-year period which could render valuable a judgment that was uncollectible at the time of its rendition. The judgment debtor's fortunes may turn. She

might, for example, engage in a lucrative business or profession, or inherit substantial monies or properties.

In *St. Paul Fire and Marine Insurance Co.* v. *Bank of Stockton* (N.D.Cal. 1963) 213 F.Supp. 716, when faced with a similar problem, the court refused to speculate as to the value of a hypothetical judgment. In *St. Paul,* a bank attempted to recover under a forgery insurance policy for losses suffered in extending credit on the basis of two signatures, one of which was forged. Although ultimately holding that no insurance coverage was afforded because of failure to comply with certain notice requirements, the court concluded that it was improper to attempt to speculate as to the value of a hypothetical judgment for the purpose of breaking the causative link between a defendant's negligence and damages flowing from that negligence. The court observed: "Innumerable factors could make a good judgment worthless or a valueless judgment collectible the day after either was obtained." (*Id.,* at p. 719.)

In contrast, we can envisage circumstances which might well warrant a conclusion that a particular document might be worthless even if genuine. For example, if a seller attempts to sell goods which he does not own the document purporting to transfer ownership of the goods is worthless, regardless of whether it is properly notarized. (See *Tutelman* v. *Agricultural Ins. Co.* (1972) 25 Cal.App.3d 914 [102 Cal.Rptr. 296]; *Hemet Home Builders Assn.* v. *Wells* (1934) 3 Cal.App.2d 65 [39 P.2d 233], hg. den.; *Ross* v. *New Amsterdam Casualty Co.* (1922) 56 Cal.App. 254 [205 P. 43]; see also *Kirsch* v. *Barnes* (N.D.Cal. 1957) 153 F.Supp. 260.) Even a valid signature to such a document has no legal effect.

The forged instrument in the case before us, however, is of a different character. It does not purport to convey property which the seller does not own. Rather, the judgment that plaintiff could have obtained from Mrs. Durkin had she in fact signed the guarantee, as plaintiff was led to believe, might have had some future value. For this reason, we hold that plaintiff's claim is not defeated either by the fact or the possibility that a judgment against the party whose signature was forged could not have been satisfied at a particular time.

2. *The Notary's Act as Proximate Cause*

■ Assuming, for the sake of argument, that a judgment against Mrs. Durkin would have been worthless because of her then existing

insolvency, it does not necessarily follow that the negligence of Minden and UCB did not proximately cause plaintiff's damage. The record discloses that plaintiff relied on Minden's acknowledgment of the genuineness of Mrs. Durkin's signature, and that but for this reliance plaintiff would not have entered into the transaction which caused it the damages it now seeks to recover.

We acknowledge that there is older California authority for the general proposition that a false notarial acknowledgment does not proximately cause a loss if the forged instrument would have been worthless if genuine. (*Heidt* v. *Minor* (1891) 89 Cal. 115 [26 P. 627], affd. 113 Cal. 385 [45 P. 700]; *McAllister* v. *Clement* (1888) 75 Cal. 182 [16 P. 775]; *Ross* v. *New Amsterdam Casualty Co., supra*, 56 Cal.App. 254.) In such a situation, these cases reason, the plaintiff is in no worse position than he would have been in if the signature had been genuine since all he would have had in the latter circumstance is an action on a worthless instrument.

This reasoning, however, is inapplicable to those cases, like the present one, in which the record fully discloses that plaintiff would not have entered into the transaction but for the false acknowledgment. Nor does it matter that plaintiff was relying on the authenticity of other signatures as well, for it bargained for and assumed that it was receiving the acknowledged signatures of *all* of the guarantors. In the matter before us it was stipulated that Mrs. Durkin would not sign the guarantee and, further, that plaintiff would not have entered into the agreement but for the notarial acknowledgment of her signature. The record amply supports the conclusion that if Minden had not negligently acknowledged Mrs. Durkin's signature, plaintiff would never have entered into the transaction which caused it damages. Further, Minden's negligence effectively enabled other parties to deceive plaintiff into believing that Mrs. Durkin had signed the guarantee. This is precisely the kind of deception which it is the purpose of notarial acknowledgments to eliminate. (See *McDonald* v. *Plumb* (1970) 12 Cal.App.3d 374, 377-378 [90 Cal.Rptr. 822], hg. den.)

Two appellate cases decided more recently than *Heidt, McAllister* and *Ross* have adopted the view that the lack of value of a forged document does not exonerate a negligent notary public. In *Hemet Home Builders Assn.* v. *Wells, supra,* 3 Cal.App.2d 65, 79-80 (hg. den.), defendant notary forged the names of fictitious persons to three deeds of trust received by

plaintiff as security for three promissory notes and then notarized the "signatures." The court held that even though the deeds of trust would have been worthless, the signatures being of fictitious persons, the defendant's act of falsely acknowledging the signatures proximately caused the plaintiff's loss because plaintiff would not have paid out money but for the certificate of acknowledgment.

Similarly, in *Tutelman* v. *Agricultural Ins. Co., supra,* 25 Cal.App.3d 914, the court found that a notary's false preparation of notes and deeds of trust and false acknowledgment of these documents permitted the deeds of trust to be recorded and thereby induced plaintiffs to purchase the deeds of trust. Thus, although the deeds of trust were in fact worthless, the court held that the actions of the notary were a proximate cause of plaintiff's injuries.

We conclude that the rationale of *Hemet* and *Tutelman* leads to a more responsible and enlightened result in a case such as the present one. Here, Minden's negligent act, in concurrence with the possible criminal conduct of other parties, resulted directly and foreseeably in plaintiff's injuries. It is irrelevant to this causal nexus that Mrs. Durkin lacked financial resources with which to satisfy any judgment against her. The possibility that plaintiff would have incurred the same injuries even without Minden's negligence because of Mrs. Durkin's financial situation, cannot be permitted to obscure the fact that but for Minden's negligence plaintiff would not have entered into the transaction from which it suffered loss.

The judgment is affirmed.

Wright, C. J., McComb, J., Tobriner, J., Mosk, J., Sullivan, J., and Clark, J., concurred.