[Civ. No. 20862.   Second Dist., Div. Three.   Sept. 12, 1955.]

RAYMOND DAHLBECK, Petitioner, v. INDUSTRIAL ACCIDENT COMMISSION et al., Respondents.

Lewis Garrett for Petitioner.

Edmund G. Brown, Attorney General, Victor A. Gables and James C. Maupin, Deputy Attorneys General, Everett A. Corten and Edward A. Sarkisian for Respondents.

· ASHBURN, J. pro tem.*—Through writ of review petitioner Raymond Dahlbeck seeks to annul an order of the Industrial Accident Commission denying him an award for

*Assigned by Chairman of Judicial Council.

subsequent injury under section 4751, Labor Code; also an order denying his petition for reconsideration of the former order. That section is part of an article of the Labor Code (§§ 4750-4755) which prescribes a formula for compensation of permanently partially disabled persons who are fortunate enough to keep or secure employment and who suffer subsequent permanent injuries. The purpose and scope of the plan are succinctly described by Mr. Justice Schauer in *Subsequent etc. Fund* v. *Industrial Acc. Com.*, 39 Cal.2d 83, 85 [244 P.2d 889] : "An employer of a workman who has a permanent physical impairment and who thereafter sustains a compensable injury resulting in permanent disability, is not liable for compensation for the ensuing combined disabilities, but only for that portion of permanent disability which is caused by the last injury. (Lab. Code, § 4750.) If an employe who is permanently partially disabled receives a subsequent compensable injury which results in increased permanent partial disability greater than that caused by the last injury alone, and the combined disabilities are 70 per cent or more of total, he is entitled to receive, in addition to the normal compensation for the last injury, compensation for the remainder of the combined permanent disability. (Lab. Code, § 4751.) The Industrial Accident Commission is to fix and award the amount of the last mentioned special additional compensation, and to direct the State Compensation Insurance Fund to pay it out of funds appropriated for the purpose. (Lab. Code, § 4754.) "

The text of sections 4750 and 4751 is as follows: section 4750: "An employee who is suffering from a previous permanent disability or physical impairment and sustains permanent injury thereafter shall not receive from the employer compensation for the later injury in excess of the compensation allowed for such injury when considered by itself and not in conjunction with or in relation to the previous disability or impairment. .

"The employer shall not be liable for compensation to such an employee for the combined disability, but only for that portion due to the later injury as though no prior disability or impairment had existed."

Section 4751: "If an employee who is permanently partially disabled receives a subsequent compensable injury resulting in additional permanent partial disability so that the degree of disability caused by the combination of both disabilities is greater than that which would have resulted from the sub-

sequent injury alone, and the combined effect of the last injury and the previous disability or impairment is a permanent disability equal to 70 per cent or more of total, he shall be paid in addition to the compensation due under this code for the permanent partial disability caused by the last injury, compensation for the remainder of the combined permanent disability existing after the last injury as provided in this article."

The extra burden of the later injury is thus shifted from the employer to the fund, which consists of money in the state treasury, taxpayers' money (§§ 4754-4755); the plan "imposes liability upon the entire tax-paying public." (*Subsequent etc. Fund* v. *Industrial Acc. Com., supra,* p. 88.) And the object is to encourage the employment of handicapped workers, thus facilitating their rehabilitation, sustaining their morale, and preventing their becoming public charges due to actual inadequacy of normal compensation awards. (See *Wolski* v. *Industrial Acc. Com.,* 70 Cal.App.2d 427, 432 [161 P.2d 283]; *Pacific Gas & Elec. Co.* v. *Industrial Acc. Com.,* 126 Cal.App.2d 554, 558 [272 P.2d 818]; *Goodwill Industries* v. *Industrial Acc. Com.,* 114 Cal.App.2d 452, 460 [250 P.2d 627].) The applicable provisions of the code are to be "liberally construed by the courts with the purpose of extending their benefits for the protection of persons injured in the course of their employment." (§ 3202.)

Petitioner and his employer are within the Workmen's Compensation Act and the employer properly insured. Petitioner has suffered three industrial injuries which are summarized as follows:

| "CASE No. | DATE OF INJURY | NATURE OF INJURY | PERCENTAGE OF PERMANENT DISABILITY |
|---|---|---|---|
| 81-628 | 1944 | Right Hand | 33⅓ |
| 133-932 | 2/13/50 | Burns | 49¾ |
| 135-035 | 9/28/51 | Left Wrist | 9¼ " |

The percentages given in the last column are those fixed by the commission. The first injury was rated 33⅓ per cent permanent disability and an award of $3,990 made and paid. The next injury consisted of burns from an explosion, involving both hands, the face, right hip, right foot and other areas from which skin had been removed for grafting purposes. It occurred on February 13, 1950, was covered by application in case number 133-932. The commission found 49¾ per cent permanent disability considering that injury independently of the third or last one, which occurred in September, 1951,

an injury to the wrist, rated at $9\frac{1}{4}$ per cent permanent disability in case number 135-035. Compensation awards were made for the last two injuries, each considered independently of any others, in the sum of $5,970 for the second (the burns) and $1,110 for the third (wrist).

The Subsequent Injuries Fund was joined in cases 133-932 and 135-035 because petitioner sought an award under section 4751 with respect to each of those injuries. The two cases were consolidated for hearing. The commission decided that the first and second injuries (hand and burns) should be considered together under section 4751, that the combined effect was a permanent disability of 83 per cent and on that basis made an award in case 133-932 of $3,990 (83 per cent less $49\frac{3}{4}$ per cent) plus a life pension of $10.62 per week, all payable out of the Subsequent Injuries Fund.

But the commission denied any such award in case 135-035, under section 4751, for the reason that the second injury, the burns, had not become *permanent and stationary* at the time of the last injury, the wrist. It further held that that disability did become stationary on August 14, 1952 (about a year after the last, the wrist, injury), and hence the award of $5,970; but, because the injury from the burns had not become stationary by the time of the last injury, September 28, 1951, that second disability was held not a previous permanent partial disability within the purview of section 4751. The instant proceeding attacks only this ruling, not the one in case 133-932. And all counsel agree that the only question here presented is the correctness of this one ruling. The matter is one of first impression.

It will be noted that this holding excludes any possibility of the burns ever becoming the basis for an award under 4751 and does so upon the narrow ground that that disability, though permanent and stationary at the time of the hearing, had not reached that state of equilibrium at the time of the later injury in September, 1951. The statute does not use the word stationary. That has been read into it by the commission as a means to an easy and practical administration of the law. The viewpoint is expressed in rule 10925 of the commission, effective August 1, 1952, which reads:

"*Disability When Considered Permanent*: A disability will be considered permanent after the employee has reached maximum improvement or his condition has been stationary for a reasonably period of time. The Commission will determine what is a reasonable period of time."

■ The statute contains no language suggesting a necessity of stationary status of a prior disability in order to form the basis for a subsequent injury award, nor does it imply the necessity of such condition at the time of the later injury. It merely uses the word permanent. ■ " 'Ordinarily the term permanent, when applied to a personal injury means lasting during the future life of the injured party.' " (*Sweeney* v. *Industrial Acc. Com.*, 107 Cal.App.2d 155, 159 [236 P.2d 651].) True, this is not an exclusive definition, for a condition may be considered permanent " 'where further change—for better or worse—is not reasonably to be anticipated under usual medical standards.' " (Sweeney, at p. 159.) But that language does not imply that a condition which is progressive and ultimately fatal cannot be permanent either as a matter of semantics or one of ascertaining actual legislative intent. ■ The application of the commission's rule would preclude consideration of any such progressive disability. No reason other than easy practical application of the law suggests itself in support of the view that one whose occupational disease has been arrested may receive the benefit of a subsequent injury award when one who is fatally stricken as a result of industrial injury (e.g., silicosis, asbestosis, radiation toxemia, carbon tetrachloride poisoning) may not enjoy the beneficent balm of that same statute. There are doubtless innumerable accidental injuries and occupational diseases which lend themselves readily to application of rule 10925 (e.g., the hand and wrist injuries of petitioner) but that fact affords no basis for an argument that more serious and unalterably progressive disabilities must be excluded or, indeed, that any permanent disability should be so treated. The workers who are so afflicted are more in need of the additional award than are those whose disability has become stationary.

■ It is argued that "The rating, whenever made, must be with reference to the pre-existing condition as it existed at the time of the last industrial injury"; also that the statute "provides that additional compensation shall be paid only for the *extent* of permanent disabilities which existed *before* the last compensable injury." But the statute carries no such suggestion. ■ It is common and necessary practice in fixing a normal award to evaluate the disability at the time of award ,in view of conditions then existing, and after peering into the future and determining so far as possible the reasonable probabilities. The award is based on an appraisal of

all these elements, past, present and prospective. (See *Ansbach* v. *Department Industrial Relations,* 99 Cal.App. 677, 680 [279 P. 224].) That is what was necessarily done here with respect to the burns and the $5,970 award. "It is the prospective loss of future earning power under the existing handicap of physical impairment that is to be considered. . . ." (*Department of Motor Vehicles* v. *Industrial Acc. Com.,* 14 Cal.2d 189, 192 [93 P.2d 131].) There is no reason why the combined effect of two injuries should not be valued in the same way under section 4751.

The attorney general also argues that a construction of the statute upholding petitioner's contention "would compel the Commission to assess liability against Subsequent Injuries Fund based entirely upon conjecture and surmise." This plainly refers to the process of evaluating the future progress of a disability that has not come to rest. It is a thing that courts and juries do every day in personal injury actions. And, while the triers of the facts must confine themselves to awards based upon reasonable certainty, the medical evidence need not reach any such degree of positive assertion. (*Bauman* v. *San Francisco,* 42 Cal.App.2d 144, 163 [108 P.2d 989]; *Paolini* v. *City & County of San Francisco,* 72 Cal.App.2d 579, 591 [164 P.2d 916]; 14 Cal.Jur.2d § 71, p. 695.) The commission and its referees should be deemed no less competent to perform this task than is the ordinary jury. The brief of the commission herein concedes that petitioner's second injury "resulted in *permanent* disability which had not at the moment of the third injury become stationary." (Emphasis added.) Certainly that disability was in condition for evaluation as early as April 28, 1950, and June 6, 1950, for Dr. Flamson reported on both those dates that petitioner "will have permanent disability." And a rating of same at either of those dates would have involved no more speculation or conjecture than the jury properly considers in everyday personal injury actions.

Next it is argued that the contemporaneous administrative construction of a statute is entitled to great weight and will not be rejected unless clearly erroneous, citing *Coca-Cola Co.* v. *State Board of Equalization,* 25 Cal.2d 918, 921 [156 P.2d 1]; *Nelson* v. *Dean,* 27 Cal.2d 873, 880 [168 P.2d 16, 168 A.L.R. 467]. The complement to the rule stated in these cases appears in *California Drive-In Restaurant Assn.* v. *Clark,* 22 Cal.2d 287, 294 [140 P.2d 657, 147 A.L.R. 1028]: "But where there is no ambiguity and the interpretation is clearly

erroneous, such administrative interpretation does not give legal sanction to a long continued incorrect construction. The administrative interpretation cannot alter the clear meaning of a statute.'' To same effect see *Groves* v. *City of Los Angeles,* 40 Cal.2d 751, 761 [256 P.2d 309]; *Gunn* v. *State Board of Equalization,* 123 Cal.App.2d 283, 287 [266 P.2d 840]. It is said in *Whitcomb Hotel, Inc.* v. *California Emp. Com.,* 24 Cal.2d 753, 757 [151 P.2d 233, 155 A.L.R. 405]: ''Whatever the force of administrative construction, however, final responsibility for the interpretation of the law rests with the courts. 'At most administrative practice is a weight in the scale, to be considered but not to be inevitably followed. . . . While we are of course bound to weigh seriously such rulings, they are never conclusive.' (*F. W. Woolworth Co.* v. *United States,* 91 F.2d 973, 976.) An administrative officer may not make a rule or regulation that alters or enlarges the terms of a legislative enactment.'' We find no such ambiguity in the statute under consideration as would warrant the interpretation given it by rule 10925. We do find that construction to be erroneous.

Finally it is argued that petitioner's construction of the statute would result in his receiving compensation considerably in excess of that ordinarily recoverable for total disability. It is said: ''The Workmen's Compensation program contemplates a maximum permanent disability of 100 percent for total disability, affording a maximum award of $12,000.00 disability indemnity.'' In the same breath counsel point out that petitioner has received to date ''a total award of $15,060.00 based upon combined permanent disability ratings of 125½ per cent.'' But counsel concede that this is all right because the commission has done it, the result being partially ''unavoidable'' under its own decision in *Subsequent Injuries Fund* v. *Industrial Acc. Com. and Warnock,* 15 Cal.Comp. Cas. 211. Such a result was held permissible in *Pacific Gas & Elec. Co.* v. *Industrial Acc. Com.,* 126 Cal. App.2d 554 [272 P.2d 818]. ▪ Moreover it should be borne in mind that the $12,000 maximum to which reference is made is the top amount payable by the employer, and section 4751 was expressly designed to impose upon the taxpayers the burden (in certain specified instances) of payments additional to those borne by the employer.

Actually the record does not afford basis for the conclusion that application of petitioner's construction of the statute ''could thus result in a total workmen's compensation award

to the employee for all three claims, including both normal and additional benefits, in the aggregate sum of $25,960.00—this is a program in which $12,000.00 disability represents *total* permanent disability." For the petition shows what actually occurred in this matter of combined rating. "On the 16th day of June, 1954, at the request and instruction of the Hearing Referee, Permanent Disability Rating Specialist, J. M. Crowley, handed down a recommended permanent disability rating combining all of the disabilities in the three injuries, and said combined rating was in the amount of one hundred percent (100%), equivalent to four hundred (400) weeks of disability payments at the rate of Thirty ($30.00) Dollars per week, and to such other benefits including a lifetime pension enumerated in such cases by the Labor Code." The commission's answer concedes that "all three combined finally resulted in total (100%) permanent disability." The exact language of the rating specialist is this: "The recommended rating is 100%, equivalent to 400 weeks of disability payments at the rate of $30.00 a week in the total sum of $12,000.00, and thereafter a life pension of 40% of the average weekly wage at the rate of $18.46 per week."

The real vice of the argument of respondent lies in failure to recognize the fact that a 100 per cent rating for normal compensation purposes does not necessarily mean a 100 per cent rating for all purposes. This is settled by *Smith* v. *Industrial Acc. Com.*, 44 Cal.2d 364 [282 P.2d 64]. George Smith had suffered disability which was ratable at 100 per cent permanent disability immediately before he received a new injury rated at 5¼ per cent permanent disability. After this last injury he sought an award against the Subsequent Injuries Fund and same was denied, the commission taking the position that " 'permanently *partially* disabled,' as used in Labor Code, section 4751, can be interpreted only as meaning having disability which is ratable at less than 100%." In rejecting this view and annulling the commission's order the Supreme Court said, at page 367: "It is settled law in this state that an employee may receive a permanent disability rating of 100 per cent and be entitled to the disability payments incident to such ratings although he is able to return to work at the wages he received before the injury which caused disability. . . . It is permissible and desirable to distinguish between a formula or rule—established '100 per cent disability' for certain rating purposes, and actual total disability insofar as productive work or com-

pensated employment is concerned.'' And at page 370: ''If an employe may properly be rated at 100 per cent disability to qualify him for the basic form of workmen's compensation, even though his earning power has not in truth, for practical purposes, been impaired, it should be at least equally permissible to penetrate the fiction of 100 per cent disability and accept the truth of his remaining earning ability so that the further truth of a subsequent injury with increased actual disability may be compensated from the fund set up for that purpose.''

It should be observed that no question is before us as to whether an annulment of the orders under attack at bar will afford good ground for the commission's reviewing any of the previous awards, such as the $3,990 based upon consideration of the first and second injuries in combination (see Labor Code, § 5803; *Bartlett Hayward Co.* v. *Industrial Acc. Com.,* 203 Cal. 522, 532 [265 P. 195]; *Merritt-Chapman & Scott Corp.* v. *Industrial Acc. Com.,* 6 Cal.2d 314, 316 [57 P.2d 501]; *Pullman Co.* v. *Industrial Acc. Com.,* 28 Cal.2d 379, 388 [170 P.2d 10].)

The denial of a subsequent injury award to petitioner in case number 135-035 is not based upon any disputed question of fact; it rests solely upon an erroneous interpretation of the applicable law.

The order denying petitioner an award for subsequent injury in commission case number 135,035 and the order denying reconsideration of same are annulled. And the proceeding is remanded to respondent commission for further proceedings not inconsistent with the views herein expressed.

Wood (Parker), Acting P. J., and Vallée, J., concurred.

The petition of respondent Subsequent Injuries Fund for a hearing by the Supreme Court was denied November 9, 1955. Edmonds, J., was of the opinion that the petition should be granted.