Filed 7/24/15  Candelario v. Candelario CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| RAMIRO CANDELARIO, | D065496 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. ECU06295) |
| ADRIAN CANDELARIO et al., | |
| Defendants and Appellants. | |
| ADRIAN CANDELARIO, | (Super. Ct. No. ECU07049) |
| Plaintiff, | |
| v. | |
| RAMIRO CANDELARIO et al., | |
| Defendants. | |

APPEAL from a judgment of the Superior Court of Imperial County, Juan Ulloa, Judge.  Affirmed.

Law Offices of Everardo Vargas Valencia and Everardo Vargas Valencia for Defendants and Appellants.

No appearance for Plaintiff and Respondent.

Defendants and appellants Adrian Candelario and his wife Elsa Candelario were ordered by the trial court to pay compensatory damages totaling $224,750 plus prejudgment interest to plaintiff and respondent Ramiro Candelario, Adrian's elder brother. Before departing for Mexico in late 2007, Ramiro executed a quitclaim deed conveying commercial properties located in Calexico, California (sometimes subject properties) to Adrian and himself as joint tenants. Ramiro also added Adrian as a signatory to his checking accounts.

Ramiro testified that his intent was for Adrian to manage his business affairs in his absence and that he did not intend to convey to Adrian an ownership interest in the subject properties. Adrian, however, testified it was understood that his brother was conveying to him an ownership interest in the subject properties as compensation for his management of the properties while Ramiro was away.

In any event, in late 2010 Ramiro returned and resumed control of the subject properties and, in March 2011, he filed a lawsuit alleging Adrian (and Elsa) had wrongfully possessed said properties and misappropriated funds. The trial court ruled in Ramiro's favor, finding he never intended to convey a property interest to Adrian.

On appeal, defendants only contest the damages award, alleging that the trial court's calculation of damages was not supported by the record. We conclude substantial evidence in the record supports the damages award and, thus, affirm the judgment.

2

FACTUAL OVERVIEW

Adrian and Ramiro are brothers from a family of 15 siblings. They both grew up in the village of La Huerta in the Mexican state of Jalisco and immigrated to the United States as adults. Ramiro was approximately 72 years old at the time of judgment. Adrian is approximately 10 years younger than Ramiro. Neither of them speaks English particularly well and neither possesses any formal education beyond elementary school, except for some vocational training Adrian received.

Adrian, despite not being proficient in English, is a naturalized United States citizen. In the past, Adrian amassed significant profits from investing in real estate. Adrian purchased his first home in 1986, which he sold at a profit of $120,000. He also purchased a pair of condominiums, netting $225,000 from the sale of one of them. In 2008, Adrian assisted Ramiro in conducting a short sale.

Circa 2007, Ramiro owned a business, "Ramiro Trucking," based in Calexico, California as well as parcels of land forming a commercial complex that housed both the trucking business and commercial tenants who paid Ramiro rent. The property is broken up into three assessor parcels (03, 04, and 05) and is located on 106 West 7th Street and 110 West 7th Street in Calexico. Adrian was a salaried employee of Ramiro Trucking. Adrian began working for Ramiro in September 2006. According to Adrian's testimony, Ramiro first hired Adrian to examine Ramiro's accounts.

At or near the time of the conveyances, Ramiro was in ill health. He had been suffering from depression since the death of his wife in 2004. Ramiro was also diabetic and was suffering from sciatic nerve problems. Ramiro decided to sell his trucking business and return to Mexico. In January 2007, Ramiro added Adrian as a signatory to

3

his business and personal checking accounts and executed a quitclaim deed naming himself and Adrian as joint tenants to a portion of Ramiro's commercial property in Calexico. In October 2007, Ramiro executed quitclaim deeds conveying two other commercial properties to Ramiro and Adrian as joint tenants. Adrian did not pay Ramiro anything for the subject properties.

The notary public who prepared and witnessed the deeds, Lourdes Olivas, testified at trial that Ramiro told her he was terminally ill[1] and wanted to ensure his properties did not go to the government when he died. According to Olivas, Ramiro expected Adrian to administer the subject properties in Ramiro's absence and disburse the subject properties among their siblings if he died while in Mexico.

Olivas testified that Ramiro initially believed a power of attorney in favor of Adrian would allow Ramiro to carry out his intentions. Olivas, however, told Ramiro that the power of attorney would not allow Adrian to control the property after Ramiro died and suggested he instead execute deeds naming Adrian as a joint tenant.

Ramiro testified that he did not understand he was conveying an ownership interest to Adrian when he deeded the subject properties to himself and Adrian as joint tenants. Instead, Ramiro merely intended to have Adrian administer the property in his absence. As noted, Adrian testified that he received an ownership interest in the subject properties as compensation for his management of said properties and that this was understood between the two of them.

---

[1] Ramiro denied ever saying he was terminally ill, but testified that he felt like he was dying and was in ill health.

4

Ramiro departed for Mexico sometime in December 2007, leaving Adrian to manage the subject properties and collect rents from tenants. Adrian collected rent monies from tenants, deposited the funds in the jointly-held business account and used the account to pay the expenses of maintaining the subject properties. Adrian also withdrew funds for Ramiro's use in Mexico, at Ramiro's request.

Following Ramiro's departure, Adrian withdrew $30,000 from the joint account and deposited it into a certificate of deposit account (CD). Adrian later withdrew the $30,000 along with what he claimed was $740 of earned interest from the CD. In February 2008, Adrian collected $25,000 from the sale of two vehicles and a trailer from the trucking business. In early 2008, Ramiro agreed to loan his brother Alejandro $20,000 and sent instructions to Adrian to loan the money from their joint bank account. Adrian gave Alejandro $25,000. Alejandro returned $5,000 immediately to Adrian, which Adrian deposited into his own personal bank account. Alejandro repaid the $20,000 loan in July 2008, making the check payable to Adrian.

Ramiro reported rents derived from the subject properties on his income tax returns. Adrian helped Ramiro report his income by informing Ramiro that he was collecting a steady income of rent of $3,500 a month or $42,000 annually. In 2010, Adrian collected $800 a month for six or seven months from J&J Supply, one of the tenants of the subject properties. However, Adrian did not deposit any of this rental income into the joint account, but instead kept the money and reported it as income on his tax returns.

In November 2010, Ramiro returned to California. That month, Ramiro and Adrian purchased a car for Ramiro's personal use using Adrian's funds. On December 3,

5

2010, Adrian showed Ramiro the quitclaim deeds and declared that he, Adrian, owned the subject properties. Following this incident, Ramiro checked the joint business account and discovered his funds had dwindled to $14,000. Ramiro closed the account. Shortly after the confrontation with Ramiro, Adrian executed a quitclaim deed transferring ownership of the subject properties to himself and his wife Elsa as joint tenants. Ramiro nonetheless resumed control of the subject properties later that month.

PROCEDURAL OVERVIEW

In late February 2011, Adrian filed a lawsuit against Ramiro and Ramiro's new wife, Griselda Candelario, alleging that they had purchased and received a car from Adrian without tendering payment. In early March 2011, Ramiro in response filed a separate lawsuit against Adrian and Elsa alleging they wrongfully possessed the subject properties and misappropriated funds derived from those properties. Adrian's lawsuit was transferred and consolidated with Ramiro's lawsuit. A bench trial was held in early October 2013.

At the conclusion of the trial, as noted the court found that Ramiro had not intended to transfer to Adrian an ownership interest in the subject properties and that Ramiro was in fact the sole owner of said properties. The court further determined that during the time Adrian was in charge of Ramiro's affairs, Adrian collected $172,800 in rent. Adrian used the account funds to pay himself a salary of $28,000 and to pay between $21,000 and $27,000 in expenses. The court found that in addition to the rents, Adrian misappropriated at least $80,000 ($30,000 withdrawn from the joint account plus $750 in interest; $25,000 from the sale of equipment; and $25,000 for the loan to Alejandro Candelario).

6

As part of the judgment, the court ordered Adrian and Elsa to execute quitclaim deeds returning the subject properties to Ramiro. The court also ordered Adrian to pay compensatory damages to Ramiro as follows:

"a.    $30,750.00 plus prejudgment interest from December 7, 2007;

"b.    $25,000.00 plus prejudgment interest from February 28, 2008;

"c.    $25,000.00 plus prejudgment interest from July 31, 2008; and

"d.    $172,800.00,

"i.    subject to set-off for such expenses for which Adrian Candelario properly accounts,

"ii.    subject to set-off for salary of $800.00 per month for 36 months,

"iii.    plus prejudgment interest based on such accounting[.]"

As to Adrian's claim against Ramiro, the court awarded Adrian $13,200 in compensatory damages plus prejudgment interest from December 31, 2010, plus the cost of suit in regards to that case only.

## DISCUSSION[2]

### A.  *Standard of Review*

We review the record to determine if the trial court's damages award is supported by substantial evidence. "In so doing, we 'view the evidence in the light most favorable to the prevailing party, giving it the benefit of every reasonable inference and resolving all conflicts in its favor in accordance with the standard of review so long adhered to by

---

[2]    Ramiro did not file a respondent's brief with the court. Nonetheless, we review Adrian's claims on the merits and will reverse the trial court's damages award only if prejudicial error is found.  (See *Kennedy v. Eldridge* (2011) 201 Cal.App.4th 1197, 1203, citing *In re Bryce C*. (1995) 12 Cal.4th 226, 232–233.)

7

this court.' (*Jessup Farms v. Baldwin* (1983) 33 Cal.3d 639, 660.)  If the record demonstrates substantial evidence in support of the judgment, we must affirm even if there is substantial contrary evidence." (*Donovan v. Poway Unified School Dist.* (2008) 167 Cal.App.4th 567, 582.)

"When a trial court's factual determination is attacked on the ground that there is no substantial evidence to sustain it, the power of an appellate court *begins* and *ends* with the determination as to whether, *on the entire record*, there is substantial evidence, contradicted or uncontradicted, which will support the determination, and when two or more inferences can reasonably be deduced from the facts, a reviewing court is without power to substitute its deductions for those of the trial court.  *If such substantial evidence be found, it is of no consequence that the trial court believing other evidence, or drawing other reasonable inferences, might have reached a contrary conclusion.*" (*Bowers v. Bernards* (1984) 150 Cal.App.3d 870, 873-874.)  "As long as there is such evidence, and it is 'substantial' -- that is, of 'ponderable legal significance,' 'reasonable in nature, credible, and of solid value' -- we are bound to uphold the judgment." (*Grappo v. Coventry Fin. Corp.* (1991) 235 Cal.App.3d 496, 507.)

B.  *Analysis*

Defendants do *not* contest the court's finding that Ramiro owns the subject properties.  Rather, as noted, defendants contend the compensatory damages the court awarded to Ramiro are not supported by substantial evidence because Ramiro's estimate of how much money Adrian misappropriated is overly speculative.  In support of this claim, defendants cite testimony from Ramiro that Ramiro did not know exactly how much money was in the various accounts before he left for Mexico.  Ramiro also

8

admitted at trial that his estimates of how much money defendants owed him did not take into account various expenses related to upkeep of the subject properties and/or withdrawals or remittances from the account to Ramiro and his current wife, Griselda. We reject defendants' contention.

As demonstrated by the record, the court awarded Ramiro $30,750 plus prejudgment interest for the $30,000 Adrian took from their joint account and placed in a CD. Adrian himself testified he took the $30,000 from the checking account, placed the money in a CD and earned $740 in interest before withdrawing *and keeping* the money. Ramiro denied ever authorizing Adrian to withdraw theses funds and place them in a CD. We conclude this evidence is substantial and supports the finding of the court on this particular item of damage. (See *Bowers v. Bernards*, *supra*, 150 Cal.App.3d at pp. 873-874.)

The court next awarded Ramiro damages of $25,000 for proceeds from the sale of two trucks by Adrian. Adrian acknowledged selling the two trucks. Alejandro testified he witnessed the sale of the two trucks by Adrian for $25,500. According to Ramiro, he had authorized Adrian to sell the trucks for $25,000, money which was supposed to be deposited into the joint account. Ramiro testified he did not authorize Adrian to keep the funds for himself. Again, we conclude this evidence is substantial and supports the award of this particular item of damage by the court.

The $25,000 award for the loan Adrian made to Alejandro is also supported by substantial evidence in the record. Alejandro testified he received $25,000 from Adrian after Ramiro approved a $20,000 loan. Alejandro immediately paid back the extra $5,000, but he gave the money directly to Adrian. When Alejandro repaid the $20,000

9

loan, he wrote a check to Adrian, who in turn kept the money. Ramiro testified Adrian was not entitled to keep any of this money. Such evidence is more than sufficient to support the court's award of this particular item of damage.

The assessment of how much rental money Adrian owed Ramiro is also supported by the evidence in the record. Ramiro, with the help of Adrian, reported the rents from the subject properties in Ramiro's income tax returns filed during the years he was living in Mexico. Adrian also testified in 2010 he received $800 a month in rent for six or seven months from J&J Supply. Unlike the rental income Adrian collected from other tenants of the subject properties, Adrian did not deposit the rents paid by J&J Supply into the joint account, but instead reported it as his own income.

Over the course of four years, $42,000 in annual rental income for the subject properties comes to $168,000. In addition, $800 a month over six months totals $4,800. Adding these two figures supports the court's award of $172,800 in misappropriated rental income.

Adrian began helping Ramiro manage his business affairs sometime in 2006, roughly a year before Ramiro executed the quitclaim deeds. Adrian also helped examine Ramiro's accounts. When Ramiro returned in late 2010, he found the funds in his business account had been reduced to about $14,000. On this record, we conclude a reasonable fact finder could have inferred that Adrian misappropriated about four years worth of rent. (See *Donovan v. Poway Unified School Dist.*, *supra*, 167 Cal.App.4th at p. 582 [noting "we 'view the evidence in the light most favorable to the prevailing party, giving it the benefit of every reasonable inference and resolving all conflicts in its favor'"].)

10

Defendants claim that Ramiro's failure to take into account various expenses in calculating what defendants owed him rendered the damages award overly speculative. We disagree. "In general, one who has been tortiously injured is entitled to be compensated for the harm and the injured party must establish 'by proof the extent of the harm and the amount of money representing adequate compensation with as much certainty as the nature of the tort and the circumstances permit.'" (*Clemente v. Cal.* (1985) 40 Cal.3d 202, 219.)

Here, we conclude the record provides sufficient evidence to show Ramiro met his burden to establish the damages arising from defendants' misappropriation of funds. As noted, the various damage awards are supported by specific figures drawn from the trial record, most if not all of which are supported by Adrian's own testimony. Although the record suggests that at least some of the rental funds were used for expenses such as taxes and remittances to Ramiro, we conclude the court properly accounted for such expenses by reducing Ramiro's damages in an amount equal to Adrian's salary and any expenses Adrian incurred that were supported by sufficient evidence.

## DISPOSITION

The judgment is affirmed. Because Ramiro did not appear in this appeal, he is not entitled to the costs of his appeal.

BENKE, Acting P. J.

WE CONCUR:

NARES, J.

HALLER, J.